1
2
3
# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
# RENO, NEVADA

| | |
|---|---|
| WESTERN NEVADA SUPPLY COMPANY PROFIT-SHARING PLAN AND TRUST, a tax qualified retirement plan established for eligible employees of Western Nevada Supply Company, Inc., a Nevada corporation; WESTERN NEVADA SUPPLY COMPANY 401(k) PLAN, a tax qualified retirement plan established for eligible employees of Western Nevada Supply Company, Inc., a Nevada corporation; JACK T. REVIGLIO and RICHARD J. REVIGLIO, individually and as Co-Trustees of the Western Nevada Supply Company Profit-Sharing Plan and Trust,<br><br>        Plaintiffs,<br><br>vs.<br><br>ANEESARD MGMT., LLC, a Nevada limited liability company; DRASEENA FUNDS GROUP, CORP., an Illinois corporation; THREE OAKS SENIOR STRENGTH FUND, LLC, a Nevada limited liability company; US FIRST FUND, LLC, a Nevada limited liability company; KENZIE FINANCIAL MANAGEMENT, INC., a United States Virgin Islands corporation; DN MANAGEMENT COMPANY, LLC, a Nevada limited liability company; DANIEL H. SPITZER; BARRY DOWNS; and WALTER J. SALVADORE, JR.,<br><br>        Defendants. | 3:09-CV-00737-ECR-VPC<br><br>**<u>Order</u>** |

Now pending is a motion to dismiss (#25) filed on behalf of Defendants Aneesard Mgmt., LLC, Draseena Funds Group, Corp., Three Oaks Senior Strength Fund, LLC, US First Fund, LLC, Kenzie Financial

Management, Inc., DN Management Company, LLC, individuals Daniel H. Spitzer ("Spitzer") and Barry Downs ("Downs").  On November 22, 2010, we denied (#89) the motion (#25) with respect to all Defendants except Downs.

The motion is ripe, and we now rule on it.

## I. Background

Plaintiff Western Nevada Supply Company and Profit-Sharing Plan and Trust ("Plan&Trust") is a qualified retirement plan and employee benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA") for eligible and participating employees of Western Nevada Supply Company, Inc. ("WNS"), a Nevada corporation, as the employer. (Compl. ¶¶ 4-6 (#1).)  The source of funds for the Plan&Trust is contributions made by WNS to participants' company contribution accounts in the Plan&Trust. (Id. ¶ 7.)  Plaintiff Western Nevada Supply Company 401(k) Plan ("401(k) Plan") is a qualified retirement plan under the Internal Revenue Code and an ERISA employee benefit plan established by WNS as a defined contribution and 401(k) deferral plan for eligible and participating WNS employees. (Id. ¶¶ 9-10.)  The source of funds for the 401(k) Plan consists of elective deferrals by employees and other employer contributions within the meaning of ERISA. (Id. ¶ 11.)  The Plan&Trust and 401(k) Plan are referred to collectively as "Plan" or "Plans" and assets from both plans are referred to as "Plan assets." The individual Plaintiffs and other Plan&Trust participants are beneficiaries of Plan&Trust benefits and participants in the 401(k) Plan. (Id. ¶¶ 8, 13.)  Plaintiffs Jack T. Reviglio and Richard J.

2

Reviglio are individuals who are employees, officers and directors of WNS, Co-Trustees of the Plan&Trust, administrators of the Plan&Trust, and participants in the Plan&Trust and 401(k) Plan within the meaning of ERISA. (Id. ¶ 14.)

Aneesard Mgmt., LLC ("Aneesard"), Draseena Funds Group, Corp. ("Draseena"), Three Oaks Senior Strength Fund, LLC ("TOSS Fund"), US First Fund, LLC ("USFirst Fund"), Kenzie Financial Management, Inc. ("Kenzie"), DN Management Company, LLC ("DN Management") (collectively, "entity defendants" or "legal entity defendants") are corporations and limited liability companies doing business in Nevada and elsewhere. (Id. ¶¶ 15-20.) Defendant Spitzer is an individual residing in the U.S. Virgin Islands who is allegedly the sole owner and President of Draseena, Kenzie, and DN Management, and the manager of Aneesard with DN Management, and a salesman on behalf of the TOSS Fund and USFirst Fund to the Plan&Trust, the 401(k) Plan, the individual Plaintiffs, and other plan participants or beneficiaries ("Individual Investors"). (Id. ¶ 21.) Spitzer is also alleged to have been an investment manager and trading manager who has and had dominion and control over the fund administration of Aneesard, Draseena, TOSS Fund, USFirst Fund, and Kenzie, and who had and has discretionary dominion and control over assets that have been entrusted to him by Plaintiffs and Individual Investors. (Id.) Plaintiffs allege that Spitzer, Kenzie, Aneesard, and Draseena became investment managers of the assets of the Plan&Trust, the 401(k) Plan, and the Individual Investors that were invested in and entrusted to the TOSS Fund and USFirst Fund. (Id. ¶ 32.)

3

1  Plaintiffs allege that through this role, Defendants are fiduciaries
2  of the Plan&Trust and the 401(k) Plan.  (Id. ¶ 34.)
3      Plaintiffs allege that Defendant Barry Downs is "an individual
4  associate and salesman working with Co-Defendants to solicit
5  investors in, among other funds, the TOSS Fund and USFIRST FUND, and
6  who met with Plaintiffs' representatives in that effort in or about
7  mid-and/or late 2006."  (Id. ¶ 23.)  Plaintiffs also allege that
8  each Defendant was the agent of the other Defendants.  (Id. ¶ 25.)
9      Plaintiffs contend that around summer or fall of 2006, an
10 employee of Western Nevada Supply Company learned about Draseena
11 through Defendant Barry Downs.  (Id. ¶ 57.)  Plaintiffs allege that
12 they entrusted funds and assets from the Plan&Trust, 401(k) Plan,
13 and Individual Investors to Defendants based on representations made
14 by Barry Downs.  (Id. ¶ 33.)  Plaintiffs also contend that upon
15 information and belief, Defendant Barry Downs is "paid a fee by the
16 Trading Manager, and is considered by DRASEENA to be a consultant
17 for the WNS 401(k) Plan."  (Id. ¶ 58.) (The term "Trading Manager"
18 refers to Defendant Kenzie, allegedly working through its principal,
19 Defendant Spitzer.) (Id. ¶ 47.)  Plaintiffs claim they and their
20 representatives had many discussions with Defendants Spitzer,
21 Gerebizza, Downs, and/or Salvadore to discuss how funds or plan
22 assets were invested, and were provided with written promotional
23 materials through those Defendants.
24      Plaintiffs also allege generally, against all Defendants, that
25 they are investment managers and functional fiduciaries for
26 Plaintiffs within the meaning of ERISA.  (Id. ¶ 84.)
27
28
                                   4

By the end of 2008, Plaintiffs began having difficulty obtaining information from Defendants, and were thwarted in their efforts to redeem their funds/assets from the TOSS Fund and USFirst Fund. (Id. ¶¶ 78, 102.) On December 15, 2009, Plaintiffs filed suit alleging that Defendants engaged in purposeful depletion of, and/or wrongful exercise of dominion and control over, the funds/assets of Plaintiffs. (Id. ¶ 79.) On March 25, 2010, Defendants, excluding Walter J. Salvadore, Jr., filed the motion to dismiss (#25). On April 30, 2010, Plaintiffs filed their opposition (#39) to the motion to dismiss (#25). On June 1, 2010, Defendants filed their reply (#50).

On May 27, 2010, Adam P. Segal, the attorney for Spitzer, Barry Downs, and the legal entity Defendants, filed a motion to withdraw as attorney (#47) for all Defendants excepting Barry Downs. On June 14, 2010, the motion to withdraw as attorney (#47) was granted (#59) as to all Defendants except for Barry Downs. Magistrate Judge Valerie P. Cooke ordered (#47) Defendants Aneesard Mgmt., LLC, Draseena Funds Group, Corp., Three Oaks Senior Strength Fund, LLC, US First Fund, LLC, Kenzie Financial Management, Inc., DN Management Company, LLC, and Daniel H. Spitzer to substitute new counsel no later than July 14, 2010. Defendants failed to comply, and Magistrate Judge Cooke further ordered (#76) that Defendant Spitzer may represent himself *pro se* but the six legal entity defendants named above must be represented by counsel as required by law. Defendants were warned (#76) that a failure to respond within thirty-three (33) days shall be grounds for entry of default and a default judgment against them. Defendants again failed to comply,

5

and the Clerk entered default (#81) against the seven Defendants. On November 10, 2010, Plaintiffs filed a motion for default judgment against select defendants (#83). On January 24, 2011, we held a hearing on the motion for default judgment (#83). We granted default judgment against Daniel H. Spitzer and the legal entity defendants, and final judgment (#105) was entered against them. The case against Walter J. Salvadore, Jr. is stayed (#66) due to bankruptcy proceedings.

The motion to dismiss (#25), however, is still pending with respect to Barry Downs. We ordered (#89) that both parties submit points and authorities regarding which claims in the complaint (#1) and motion to dismiss (#25) are relevant to Downs. We also granted Plaintiffs the option to file an amended complaint as an alternative to pursuing the original complaint (#1) against Barry Downs. Plaintiffs did not file an amended complaint.

On December 20, 2010, Defendant Barry Downs submitted supplemental points and authorities (#90) in support of the motion to dismiss (#25). On the same day, Plaintiffs submitted their supplemental points and authorities (#91). On January 17, 2011, Plaintiffs submitted their supplemental reply (#99), and on January 18, 2011, Defendant Barry Downs submitted his reply (#100).

**II. Motion to Dismiss Standard**

Courts engage in a two-step analysis in ruling on a motion to dismiss. <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). First, courts accept only non-conclusory allegations as true. <u>Iqbal</u>, 129 S. Ct. at 1949.

6

1  "Threadbare recitals of the elements of a cause of action, supported
2  by mere conclusory statements, do not suffice." Id. (citing Twombly,
3  550 U.S. at 555).  Federal Rule of Civil Procedure 8 "demands more
4  than an unadorned, the-defendant-unlawfully-harmed-me accusation."
5  Id.  Federal Rule of Civil Procedure 8 "does not unlock the doors of
6  discovery for a plaintiff armed with nothing more than conclusions."
7  Id. at 1950.  The Court must draw all reasonable inferences in favor
8  of the plaintiff. See Mohamed v. Jeppesen Dataplan, Inc., 579 F.3d
9  943, 949 (9th Cir. 2009).
10       After accepting as true all non-conclusory allegations and
11 drawing all reasonable inferences in favor of the plaintiff, the
12 Court must then determine whether the complaint "states a plausible
13 claim for relief." Iqbal, 129 S. Ct. at 1949. (citing Twombly, 550
14 U.S. at 555).  "A claim has facial plausibility when the plaintiff
15 pleads factual content that allows the court to draw the reasonable
16 inference that the defendant is liable for the misconduct alleged."
17 Id. at 1949 (citing Twombly, 550 U.S. at 556).  This plausibility
18 standard "is not akin to a 'probability requirement,' but it asks
19 for more than a sheer possibility that a defendant has acted
20 unlawfully." Id.  A complaint that "pleads facts that are 'merely
21 consistent with' a defendant's liability...'stops short of the line
22 between possibility and plausibility of 'entitlement to relief.'"
23 Id. (citing Twombly, 550 U.S. at 557).
24
25                           **III. Discussion**
26      Plaintiffs' complaint (#1) alleges six causes of action against
27 all Defendants.  The claims are: (1) ERISA violation for breach of
28                                   7

fiduciary duties, (2) liability for Defendants' refusal to provide requested ERISA information, (3) breach of oral contract, (4) equitable estoppel, (5) accounting, and (6) contractual breach of covenant of good faith and fair dealing.  Defendant Barry Downs argues that all claims against him must be dismissed, *inter alia*, for failure to state a claim.

**A. ERISA Claims**

Defendants argue that Plaintiffs' first and second claims, for breach of fiduciary duties under ERISA and refusal to provide requested ERISA information, must be dismissed because Plaintiffs have failed to allege any facts from which we could find that Defendant Barry Downs is a fiduciary in the meaning of ERISA. Defendants also contend that the second claim for refusal to provide requested ERISA information must be dismissed because ERISA communication and disclosure claims may only be brought against plan administrators.

<u>1. ERISA Claim for Breach of Fiduciary Duties</u>

ERISA provides that a person is a fiduciary with respect to a plan to the extent that (i) he exercises any discretionary authority or control respecting management of such plan or its assets, (ii) he renders investment advice for compensation with respect to any moneys or other property of such plan, or has authority or responsibility to do so, or (iii) he has any discretionary authority or responsibility in the administration of such plan.  29 U.S.C. § 1002(21)(A).

While Plaintiffs concede that Downs did not manage Plaintiffs' plans, and therefore the first part of section 1002(21)(A)(i) does

8

1  not apply, they argue that Downs satisfied the second part of that
2  section by having control or authority over plan assets.  (Pls'
3  Supp. at 4-5 (#91).)  We disagree.  Plaintiffs' allegations
4  regarding Downs amount to the accusation that Downs, allegedly under
5  payment by Kenzie, met with Plaintiffs and recommended the Three
6  Oaks Senior Strength Fund and USFirst Fund, and Plaintiffs, upon
7  that recommendation, invested into those funds.  Plaintiffs never
8  alleged that Downs ever possessed any Plan assets.  While Plaintiffs
9  do have additional allegations that every defendant is an agent of
10 the other defendants, and that the defendants are fiduciaries, these
11 statements are conclusions devoid of supporting facts.  Rather,
12 Plaintiffs' complaint suggests that Downs never had any control or
13 authority over the funds, as other Defendants are alleged to have.
14       More compelling is Plaintiffs' assertion that Downs is a
15 fiduciary under section 1002(21)(A)(ii).  A person "render[s]
16 investment advice" to an employee benefit plan, within the meaning
17 of ERISA, only if:
18       (i) [s]uch person renders advice to the plan as to the value
19           of securities or other property, or makes recommendation as
20           to the advisability of investing in, purchasing, or selling
21           securities or other property; and
22       (ii) [s]uch person either directly or indirectly....
23       ....
24       (B) Renders any advice . . . on a regular basis to the plan
25           pursuant to a mutual agreement, arrangement or understanding,
26           written or otherwise, between such person and the plan . . .
27           that such services shall serve as a primary basis for
28
                                    9

1         investment decisions with respect to plan assets, and that
2         such person will render individualized investment advice to
3         the plan based on the particular needs of the plan regarding
4         such matters as, among other things, investment policies or
5         strategy, overall portfolio composition, or diversification
6         of plan investments.

7 <u>Thomas, Head & Grelsen Employ. Trust v. Buster</u>, 24 F.3d 1114, 1117
8 (9th Cir 1994) (quoting 29 C.F.R. § 2510.3-21(c)(1)(1992)).

9     Plaintiffs' allegations are few when it comes to Downs.
10 Plaintiffs do, however, allege that "[u]pon information and belief,
11 DOWNS is paid a fee by the Trading Manager, and is considered by
12 DRASEENA to be a consultant for the WNS 401(k) Plan."  While this
13 statement is somewhat threadbare, when taking all inferences in
14 favor of Plaintiffs, we conclude that Plaintiffs have passed the
15 minimum threshold required to survive a motion to dismiss as to
16 Downs' fiduciary status.

17     The inquiry, however, does not end with a discussion of Downs'
18 fiduciary status.  Plaintiffs allege, *inter alia*, that as a
19 fiduciary within the meaning of ERISA, Downs was responsible for the
20 investment of the assets of Plaintiffs that were entrusted to
21 Defendants.  Plaintiffs assert that in April 2009, "Plaintiffs made
22 a detailed request for information to a DRASEENA 'consultant,'
23 Defendant DOWNS, who disclaimed any responsibility for any Plan
24 assets."  (Compl. ¶ 91 (#1).)  Plaintiffs allege that Downs'
25 response was "contrary to the fiduciary duties" owed to Plaintiffs,
26 and therefore actionable under ERISA.  The status of fiduciary
27 "carries with it the responsibility to act in the best interest of
28

the client at all times, and to serve with scrupulous good faith." Buster, 24 F.3d at 1120. As we concluded above, while the allegations against Downs are thin, we are unable to dismiss the ERISA claims when taking all inferences in favor of Plaintiffs. Plaintiffs' first claim for breach of fiduciary duty, therefore, may proceed against Downs on the limited grounds that in his capacity as a paid consultant, Downs was an ERISA fiduciary subject to various fiduciary duties that he may have breached through alleged misrepresentations to Plaintiffs, and through any involvement in the improper investment of Plaintiffs' assets.

The complaint (#1) contains additional allegations that Defendants advised Plaintiffs that arrangements had been made for redemption of Plaintiffs' assets, and thereafter, Spitzer, Draseena, and Aneesard failed to deliver any of the redemption proceeds. Requests for redemption also appear to have been made only to Spitzer, Draseena, and Aneesard. Therefore, a claim that Downs breached his fiduciary duties by refusing to redeem the assets was not properly pled in the complaint, and cannot be pursued against Downs.

Finally, Defendants' argument that an ERISA breach of fiduciary duties claim cannot be brought because the Plan assets lost their status as Plan assets by being used to purchase hedge fund shares is denied on the basis that it is premature.

### 2. Claim for Refusal to Provide Requested ERISA Information

Plaintiffs' second claim for refusal to provide requested ERISA information, however, will be dismissed because Downs is not alleged to be a plan administrator. Plaintiffs bring their second claim

1  under 29 U.S.C. § 1025(a) and 29 U.S.C. §§ 1132(a)(1) and (c).
2  Those sections "provide[] a remedy against persons designated by
3  Congress as plan administrators."  <u>Moran v. Aetna Life Ins. Co.</u>, 872
4  F.2d 296, 300 (9th Cir. 1989).  In <u>Moran</u>, the Ninth Circuit
5  concluded that "the Supreme Court's refusal to expand the remedies
6  available under ERISA . . . precludes us from extending liability
7  under section 1132(c) to other persons not named by Congress."  <u>Id.</u>
8  In this case, Downs is not alleged to be a plan administrator.
9  Rather, Plaintiffs Jack and Richard Reviglio are the plan
10 administrators.  Despite this, Plaintiffs argue that their claim
11 should be allowed to proceed because it comports with the spirit of
12 ERISA.  Plaintiffs point out that if the plan administrators are
13 unable to get information due to Defendants' conduct, they would
14 necessarily be unable to provide it to Plan participants.
15 Nevertheless, the plain language of the provisions and binding Ninth
16 Circuit decisions demand that any disclosure claims brought under 29
17 U.S.C. §§ 1025(a) and 1132 may only be brought against plan
18 administrators.  On that basis, Plaintiffs' second claim must be
19 dismissed.

20     **B. Accounting Claim**

21      An accounting is an equitable remedy, not an independent cause
22 of action.  <u>See</u> <u>Dairy Queen, Inc. v. Wood</u>, 369 U.S. 469, 478 (1962).
23 "The necessary prerequisite to the right to maintain a suit for an
24 equitable accounting, like all other equitable remedies, is . . .
25 the absence of an adequate remedy at law."  <u>Id.</u>  Here, there is
26 nothing in the complaint, nor in the arguments presented by
27 Plaintiffs in opposition to the present motion, that would tend to
28

indicate that Plaintiffs' remedy at law might be inadequate.  To maintain a suit for an equitable accounting on a cause of action cognizable at law, "the plaintiff must be able to show that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." Id. (internal quotation marks omitted).  In this case, there is nothing that appears to require the intervention of "a court of equity."  The procedures of discovery exist precisely to allow parties to obtain such information as Plaintiffs apparently seek by way of an accounting.  There is no apparent reason why a jury could not effectively resolve any factual disputes that may arise regarding the accounts between the parties.  As such, Plaintiff's fifth claim for an accounting will be dismissed.

**C. Plaintiffs' Remaining Claims**

The remaining claims against Downs must also be dismissed. Following the entry of default against the other Defendants, we ordered both parties to submit points and authorities regarding which claims in the complaint (#1) are relevant to Downs.  Plaintiff failed to make any argument regarding the remaining claims and how they relate to Downs.

The complaint (#1) is woefully deficient in allegations against Downs. Plaintiffs have not made any argument, other than through their tactic of lumping all defendants together, that Downs made any oral contract with Plaintiffs.  The same is true for the equitable estoppel and contractual breach of the covenant of good faith and fair dealing claims.  Through the supplemental briefing, in which Plaintiffs failed to address the remaining claims, Plaintiffs have

13

highlighted the deficiencies of the complaint as it relates to Downs.  This is not a case in which Plaintiffs should be allowed to separate out the Defendants through discovery.  The role, if any, that Downs played in the events leading up to this lawsuit, based on the few mentions of Downs in the complaint, seems distinct from that of Defendant Spitzer, or the legal entity defendants that are allegedly under Spitzer's control.  Those defendants are actively alleged to have control or authority over the 401(k) Plan, the WNS Profit-Sharing Plan & Trust, and plan assets.  They are specifically alleged to have been parties to agreements with the Plaintiffs.  It would be inequitable to allow Plaintiffs to plead claims broadly and generally without asserting any factual allegations against Downs specifically, considering that he is not indistinguishable, even pre-discovery, from the other Defendants.  He is not alleged to have been a Plan manager, nor to have had any control over the assets, other than through conclusory language that all Defendants are agents of other Defendants.  He is not alleged to have been a party from whom Plaintiffs requested information.  Nor is he a party to the agreements Plaintiffs allege were made between them and certain Defendants.  For example, Plaintiffs described an agreement, labeled "Confidential Private Placement Memorandum" ("PPM") to be an agreement regarding "investment decisions concerning investment funds placed into the TOSS FUND and USFIRST Fund, through ANEESARD, DRASEENA, SPITZER and KENZIE."  (Compl. ¶ 50 (#1).)  There is simply no basis on which to find that Downs should be a party to the remaining claims in this action.  Based on the foregoing, we do not

consider the merits of Defendants' argument that the state claims are pre-empted by ERISA.

### D. Standing of the Plan Plaintiffs

The Plan&Trust and the 401(k) Plan must be dismissed from this action against Downs because a claim for breach of fiduciary duty under ERISA may only be brought by the Secretary of Labor, a plan participant, beneficiary or fiduciary.  29 U.S.C. § 1132(a)(2); Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc., 185 F.3d 978, 983 (9th Cir 1999).  Plaintiffs oppose only on the basis that "ERISA does not preempt state law claims of plaintiffs who are without standing to challenge ERISA violations."  (Pls' Opp. at 7 (#39).) There are no state law claims remaining in the case against Downs, and therefore the Plan&Trust and 401(k) Plan are not proper plaintiffs, and shall be dismissed against Downs.

### E. Plan Benefits

Defendants further argue that Plaintiffs Jack and Richard Reviglio, as Plan participants, may only bring claims against the Plan for plan benefits.  Plaintiffs counter that the Reviglios are not seeking plan benefits, but rather the "redemption of assets/investments that were entrusted to Defendants."  (Pls' Opp. at 12 (#39).)  While ERISA only permits suits to recover benefits against the plan as an entity, suits may be brought for breach of fiduciary duty against an ERISA fiduciary.  29 U.S.C. §§ 1132(a)(1)(B); 1109(a); 1105(a); Gelardi v. Pertec Computer Corp., 761 F.2d 1323, 1324 (9th Cir. 1985).  Because the only remaining claim against Downs is a breach of fiduciary claim, we decline to dismiss any of the Plaintiffs at this time.

### IV. Conclusion

Plaintiffs' claim for breach of fiduciary duty under ERISA narrowly survives the motion to dismiss based on their allegation that Downs was considered a paid consultant for the 401(k) Plan. Plaintiffs' second claim for refusal to provide requested ERISA information, however, must be dismissed because only plan administrators are liable under ERISA disclosure provisions. Plaintiffs' claim for an accounting shall be dismissed because accounting is an equitable remedy, not a legal cause of action. Plaintiffs' remaining claims for breach of oral contract, equitable estoppel, and contractual breach of the covenant of good faith and fair dealing must be dismissed because Plaintiffs have failed to allege any factual bases to maintain such claims against Downs. Furthermore, the 401(k) Plan and the Plan&Trust Plaintiffs must be dismissed as plaintiffs against Downs because ERISA plans are not proper plaintiffs in ERISA civil enforcement suits.

**IT IS, THEREFORE, HEREBY ORDERED** that Defendants' motion to dismiss (#25), as it relates to Defendant Barry Downs, is **GRANTED IN PART AND DENIED IN PART** on the following basis: Plaintiffs' first claim, ERISA violation for breach of fiduciary duties shall not be dismissed, but Plaintiffs' remaining claims for failure to provide requested ERISA information, breach of oral contract, equitable estoppel, accounting, and contractual breach of the covenant of good faith and fair dealing are dismissed.  The only claim against Downs that survives this motion to dismiss (#25) is the narrow one that

Downs, as an ERISA fiduciary, breached his duty to act in the best interests of the 401(k) Plan as an investment advisor.

**IT IS FURTHER ORDERED** that the 401(k) Plan and the Plan&Trust are dismissed as Plaintiffs against Barry Downs. The action remains stayed against Plaintiff Walter J. Salvadore, Jr.

DATED: March 23, 2011.

*Edward C. Reed.*
UNITED STATES DISTRICT JUDGE

17